UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINCENT N. CEFALU                    CIVIL ACTION

VERSUS                               NO: 12-1377

TANGIPAHOA PARISH SHERIFF            SECTION: "J" (1)
DANIEL EDWARDS, ET AL

**ORDER AND REASONS**

Before the Court is Defendants' Motion for Summary Judgment.
**(Rec. Doc. 19)** Also under consideration is the Plaintiff's
opposition to Defendants' motion (Rec. Doc. 20), as well as
Defendants' reply and Plaintiff's surreply. (Rec. Docs. 25, 27)
Defendants' motion was set for hearing on June 19, 2013, on the
briefs. The Court, having considered the motion and memoranda of
counsel, the record, and the applicable law, finds that
Defendants' motion should be **GRANTED IN PART AND DENIED IN PART**
for the reasons set forth more fully below.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

1

Plaintiff Vincent N. Cefalu ("Plaintiff") filed the present action on May 30, 2012 alleging that Tangipahoa Sheriff Daniel Edwards ("Sheriff Edwards"), in his official capacity, and Tangipahoa Parish Deputy Johnathan Edwards ("Deputy Edwards"), in his individual capacity, violated his Fourth Amendment rights by falsely arresting him and by using excessive force during the arrest. (Rec. Doc. 1) As such, Plaintiff seeks compensatory and punitive damages as well as attorney's fees under 42 U.S.C. § 1983. Plaintiff further alleges that both Defendants are liable for negligence under Louisiana state law. The facts leading up to this suit are as follows:

On the night of September 9, 2011, Deputy Edwards and other first responders were on Highway 1064 assisting at the scene of an accident in which Plaintiff's son was involved.  After the accident occurred, Plaintiff arrived at the scene to tend to his son who was not severely injured in the accident. Sometime around the time of Plaintiff's arrival, a medical helicopter also arrived at the scene to deal with the seriously injured victims. After a series of events that are in dispute and that will be detailed below, all parties agree that Deputy Edwards handcuffed Plaintiff, placed him in the back of a police car for under an hour, released him, and issued him a citation for interference

with medical personnel in violation of Louisiana Revised Statute 14:332. Plaintiff was never charged for this offense.

The parties dispute the events occurring between Plaintiff's arrival at the scene and his arrest, as well as the manner in which Deputy Edwards arrested him. Defendants assert that when the Plaintiff arrived, he parked his car in the middle of the medical helicopter's landing zone and that when asked to move the vehicle, he responded with obscenities until Plaintiff's daughter moved the vehicle. Dec. of Randy Settoon, Rec. 19-6, ¶¶ 7-10; Dec. of Louis Ridgel, Rec. Doc. 19-7, ¶ 6. Defendants also assert that Plaintiff continually walked back and forth near the medical helicopter despite repeated instruction not to do so. Dec. of Ryan Arnold, Rec. Doc. 19-8, ¶ 5; Dec. of Louis Ridgel, Rec. Doc. 19-7, ¶ 7-8. One first responder noted that he had to "take hold of" Plaintiff to keep him from being injured by the spinning blades. Dec. of Ryan Arnold, Rec. Doc. 19-8, ¶ 8. For these reasons, Defendants allege that Deputy Edwards escorted Plaintiff away from the helicopter, handcuffed him, and put him in the back of the police car. Id. at ¶ 10. The Defendants' eyewitnesses to the event did not witness any mistreatment of the Plaintiff, and one noted that, once Plaintiff said he was on blood thinners and should not be handcuffed behind his back,

another deputy removed the handcuffs and let him out of the squad car. Id.; Dec. of Louis Ridgel, Rec. Doc. 19-7, ¶ 11-12.

Plaintiff presents a wholly different account of the evening. Plaintiff denies that he parked in the landing zone or that he spoke obscenities to anyone. Pl. Aff., Rec. Doc. 20-2, p. 2. Plaintiff further claims that he only passed under the spinning blades twice, and that he was only attempting to assist an officer by going back to his vehicle to obtain an copy of his son's driver's license. Id. He states that no one ever told him not to go near the helicopter. Id. Plaintiff maintains that he went under the blades, retrieved the license, and had already safely passed back under the blades to return to the officer when Deputy Edwards apprehended him. Id. Once Plaintiff was safely out of range of the blades, he contends that Deputy Edwards "bear-hugged" him and "threw him to the ground" despite Plaintiff's screams that Deputy Edwards was hurting him. Id. Plaintiff stated that when he tried to tell Deputy Edwards that he had back problems or that he needed a lawyer, he would "jolt" Plaintiff more in the back and tell him to "shut-up." Id. Plaintiff alleges that, after being thrown to the ground, Deputy Edwards threw him up against an ambulance, handcuffed him behind his back, and forcibly placed him in the back of a police car where he remained

for 46 minutes before being released and cited with the misdemeanor offense of interfering with medical personnel. Id. at 2-3. Plaintiff contends that he sustained "multiple injuries, including an acute lumbar strain, renal contusion resulting in a blood clot and damage to [his] right kidney, blood in [his] urine, injuries to [his] neck, a closed head injury, neuropraxia due to handcuffs, shoulder sprain, contusion to [his] toes, and tingling and numbness in [his hands]." Id. at 4.

On May 27, 2013, Defendants filed the instant motion for summary judgment. (Rec. Doc. 19) Plaintiff filed his opposition to the instant motion on June 9, 2013. (Rec. Doc. 20) Defendant filed a reply on June 19, 2013, to which Plaintiff responded with a surreply on June 20, 2013. (Rec. Docs. 25, 27)

## THE PARTIES' ARGUMENTS

Defendants argue that they are entitled to summary judgment on all claims. They claim that Sheriff Edwards is not liable in his official capacity because Plaintiff failed to allege any evidence of an official policy or custom that caused Plaintiff to be deprived of his constitutional rights as is required under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). Defendants further argue that Deputy Edwards is

5

not liable under § 1983 in his individual capacity because Plaintiff's constitutional rights were not violated. As to the underlying excessive force claim, Defendants contend that force was not applied, and if force was applied, it was reasonable. As for the false arrest claim, Defendants assert that Deputy Edwards had probable cause.  Further, even if he did not have probable cause, under Arshad v. Congemi, 2009 WL 585633, (5th Cir. 2009), an officer's mistaken belief that he has probable cause during a chaotic situation is reasonable, thus not a constitutional violation. Defendants argue that, even if they are found liable under § 1983, qualified immunity will shield them from the instant suit. Finally, Defendants challenge Plaintiff's state law negligence claim, noting that Plaintiff has not provided any evidence for this claim, and alternatively, that the court should decline to exercise supplemental jurisdiction over the negligence claim.

Plaintiff responds by arguing that, contrary to the requirements of FRCP 56(c)(1), the Defendants failed to submit any admissible evidence regarding the presence of a valid use-of-force policy; therefore, Defendants motion should be denied as to the official capacity claim. Alternatively, Plaintiff contends that an issue of material fact as to the Tangipahoa Sheriff's

Office's customs and policies prevents the Court from granting Defendants' motion. In regards to the individual capacity claims, Plaintiff disputes the Defendants' reliance on <u>Arshad</u>, noting that the factual backgrounds are distinguishable. Moreover, Plaintiff asserts the existence of an issue of material fact as to whether Deputy Edwards had probable cause to effectuate an arrest. As to the excessive force claims, Plaintiff contends that the police report is inadmissible hearsay; that the force was excessive due to Deputy Edwards' lack of probable cause; or, alternatively, that there is a genuine issue of material fact as to the reasonableness of Deputy Edwards' actions. Regarding the Defendants qualified immunity defense, Plaintiff argues that summary judgment is improper because there is a genuine issue of material fact as to the reasonableness requirement of qualified immunity. Finally, Plaintiff re-asserts his allegations of negligence under Louisiana law without citing to any legal authority to support his position.

**DISCUSSION**

**A. Legal Standard**

  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits

7

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence

of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## B. § 1983 Official Capacity Claim

A governmental entity may be held liable under § 1983 if one of its official policies or customs causes the deprivation of a constitutional right. Monell, 436 U.S. at 690-91. "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, thus, in an official-capacity suit the entity's 'policy or custom' must have

9

played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal citations omitted); <u>see</u> <u>Turner v. Houma Mun. Fire and Police Civil Serv. Bd.</u>, 229 F.3d 478, 483 n.10 (5th Cir. 2000). In the absence of an official policy, proof of an unconstitutional custom suffices to create official liability. <u>See</u> <u>Monell</u>, 436 U.S. at 690-691. A custom is described as "a persistent, widespread practice of [parish] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 977 (5th Cir. 1995). In the context of summary judgment, if a "[p]laintiff fails to submit any evidence that these policies are in any respect inadequate, or that there is any custom or pattern of inadequate hiring, training, supervision or discipline," summary judgment in favor of the Defendant is proper. <u>Nowell v. Acadian Ambulance Serv.</u>, 147 F. Supp. 2d 495, 502 (W.D. La. 2001); <u>see also</u> <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798 (5th Cir. 1998).

Defendants assert that Plaintiff does not allege "any specific policy or custom that was purportedly maintained in deliberate indifference to his constitutional rights." (Rec. Doc.

10

19, p. 4) This Court agrees with the Defendants. In his response to the instant motion, Plaintiff only presents evidence of a valid use-of-force policy and a single officer's alleged failure to follow the policy. See, Aff. and Rpt. of Police Procedures Expert, Dr. W. Lloyd Grafton, Rec. Doc. 20-4. In fact, in Plaintiff's expert report, Dr. Grafton states that the Tangipahoa Sheriffs Office's use-of-force policy is well-accepted across the country. Id. at 3. Further, Plaintiff did not bring forth any evidence that excessive use of force is "a persistent, widespread practice of [parish] officials or employees." Campbell, 43 F.3d 973 at 977. Instead, Plaintiff relies on Deputy Edwards' statement in his deposition that he was following the Tangipahoa Sheriff's Office's use-of-force policy. Dep. of Johnathan Edwards, Rec. Doc. 20-7, 37.9-37.25. This argument fails because Deputy Edwards was following policy if you consider Defendants' version of the facts. Deputy Edwards' personal actions, reasonable or not[1], do not render the entire Tangipahoa Sheriffs Office's policy unconstitutional. Thus, even viewing the evidence in the light most favorable to the Plaintiff, the evidence only shows that Deputy Edwards was a rogue deputy, and a government

---

[1] Whether Deputy Edwards' actions were reasonable is more properly analyzed under the remaining individual capacity and negligence claims.

11

entity cannot be found liable under § 1983 for such isolated actions. Lopez v. City of Austin, 710 F.2d 196, 198 (5th Cir. 1983).

Because it has been determined that Plaintiff did not present any evidence to support the presence of an unconstitutional policy or custom, regardless of the Defendants' evidence submitted in conjunction with their motion for summary judgment, the Court need not discuss Plaintiff's objections to the form and admissibility of the Defendants' support for their motion.

For the foregoing reasons, the Defendants' motion for summary judgment must be granted as to Plaintiff's § 1983 claim against Defendant Sheriff Daniel Edwards in his official capacity.

## C. § 1983 Individual Capacity Claim

A government actor is liable under § 1983 if the plaintiff can prove that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005). Defendants

do not challenge that Deputy Edwards was acting under the color of law, thus the only issue to resolve is whether Deputy Edwards' actions deprived the Plaintiff of a constitutional right. The Plaintiff advanced two bases for finding that his constitutional rights were deprived-false arrest and excessive force-both of which are treated in turn below.

### 1. Fourth Amendment False Arrest Claim

Defendants assert that, under <u>Spencer v. Connecticut</u>, 560 F. Supp. 2d 153 (D.Conn. 2008), a Fourth Amendment false arrest analysis is the same as a state law false imprisonment analysis, and therefore relies on Louisiana false imprisonment cases to support their motion. While that may be true under Connecticut law, Defendants cite to no legal authority showing that the same is true under Louisiana law. Therefore, the Court will disregard the Louisiana cases and base its analysis on a review of United States Supreme Court precedent and federal cases arising from the Fifth Circuit.

To prove false arrest, Plaintiff must prove "(1) that he was arrested, and (2) the arrest did not have the requisite probable cause." <u>Rhodes v. Prince</u>, 360 F. App'x 555, 558 (5th Cir. 2010). All parties agree that Plaintiff was arrested when Deputy Edwards

13

handcuffed him and placed him in the police car. The parties disagree, though, as to whether Deputy Edwards had probable cause to arrest Plaintiff.

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Haggerty v. Texas S. Univ., 391 F.3d 653, 655-56 (5th Cir. 2004). This standard "requires more than a 'bare suspicion' but less than a preponderance of evidence." United States v. Watson, 273 F.3d 599, 602 (5th Cir. 2001) (internal citation omitted).

Plaintiff was eventually cited for a violation of La. R.S. 14:332 which states that:

> Interference with medical treatment is the intentional and willful interference with a physician, physician's trained assistant, nurse, nurse's aide, paramedic, emergency medical technician, or other medical or hospital personnel in the performance of their duties relating to the care and treatment of patients in any hospital, clinic, other medical facility, or at the scene of a medical emergency.

La. Rev. Stat. Ann. § 14:332. Defendants allege that the Plaintiff cursed and yelled at emergency personnel, parked his vehicle in the medical helicopter's landing zone, and was dodging in and out of the helicopter blades so as to keep the helicopter

14

from taking off with the injured victims inside. As such, the Defendants argue that Deputy Edwards had probable cause to make an arrest under La. R.S. 14:332. Defendants further argue that, based on Arshad, it was reasonable for Deputy Edwards to think that he had probable cause. In Arshad, the court held that an officer had probable cause to arrest a civilian woman who had claimed the accident as "her scene" and would not stop treating the victim despite instructions by officers to do so. Arshad v. Congemi, 2009 WL 585633. (5th Cir. 2009) writ denied 558, U.S. 876 (2009). The court held, in light of the chaos of the scene and the fact that the plaintiff was touching the patient, it was reasonable for the officer to arrest the woman when she would not follow orders to step back from the scene. Arshad, 2009 585633 WL at *5.

In his opposition, Plaintiff avers that he only went near the helicopter blades to retrieve his son's driver's license at the instruction of another law enforcement officer. He argues that the scene was not nearly as chaotic as the Arshad scene, making the case inapposite. The Court agrees that the Defendants' reliance on Arshad is misplaced. While it is true that Arshad supports the Defendants' position according to their version of the facts, which include a chaotic scene and a non-compliant

15

plaintiff, summary judgment cannot be granted on the moving party's version of the facts when the nonmoving party has submitted an affidavit attesting to a very different set of facts. Accepting Plaintiff's account of the evening as true, Arshad would not apply because the chaos of the scene is not a factor, and it could be seen as unreasonable for Deputy Edwards to think that he had probable cause to arrest a man who was following orders in a calm manner. Thus, the Court finds that a reasonable jury could find that Plaintiff was falsely arrested in violation of his Fourth amendment rights, and that the violation serves as a basis for finding Deputy Edwards liable in his individual capacity under 42 U.S.C. § 1983.

### 2. Fourth Amendment Excessive Force Claim

Defendants correctly assert that, when an excessive force claim arises from an arrest, stop, or seizure, the claim is most properly analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 394-395 (1989). This analysis requires the Plaintiff to prove that (1) he suffered an injury, (2) the injury directly and uniquely resulted from the application of force that was clearly excessive to the need, and (3) the excessive use of force was objectively unreasonable at

the time of the incident. <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999). Defendants challenge the sufficiency of Plaintiff's evidence on all three of these elements.

Taking the injury element first, the Plaintiff must prove that he suffered some injury and that his injury is not *de minimis*. <u>Williams v. Bramer</u>, 180 F.3d 699, 703-04 <u>decision clarified on reh'g</u>, 186 F.3d 633 (5th Cir. 1999). "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." <u>Id</u>. Defendants rely on <u>Lockett v. New Orleans City</u>, in which the court held that "bruising from overly tight handcuffs," was a *de minimis* injury. <u>Lockett</u>, 607 F.3d 992 (5th Cir. 2010). Moreover, other cases have found only *de minimis* injury when the plaintiff was left in a car for under an hour, despite the fact that the detention aggravated a pre-existing condition; and, in another case, when there was evidence of officers "twisting [the plaintiff's] arms behind her back while handcuffing her, 'jerk[ing] her all over the carport,' and appli[ng] the handcuffs too tightly" where only bruising resulted. <u>Glenn v. City of Tyler</u>, 242 F.3d 307. 314 (5th Cir. 2007); <u>Freeman v. Gore</u>, 483 F.3d 404, 416 (5th Cir. 2007)

(holding that "[m]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").

Plaintiff opposes this characterization of his injuries, and claims that his injuries exceed simple bruising from handcuffs. Plaintiff alleges that he suffered "multiple injuries, including an acute lumbar strain, renal contusion resulting in a blood clot and damage to [his] right kidney, blood in [his] urine, injuries to [his] neck, a closed head injury, neuropraxia due to handcuffs, shoulder sprain, contusion to [his] toes, and tingling and numbness in [his hands]." Pl.'s aff., Rec. Doc. 20-2, p. 4. As a result of his injuries, Plaintiff asserts that he can no longer type or play the piano. Id. But, as the Defendants point out in their Reply, Plaintiff has not presented any medical records to support his allegations. Def.'s Reply, Rec. Doc. 25, p. 5. Plaintiff responds that he has voluminous medical records in support of his injuries, but has not yet submitted them so as not to burden the Court when the injury element of the claim was not in direct issue. (Pl.'s Surreply, Rec. Doc. 27, p. 4)

The Court finds the absence of the Plaintiff's medical records to be troublesome. The injury element is an essential element in Plaintiff's excessive force claim. Arguably, the

medical records should have been submitted during initial disclosures pursuant to Fed. Rule. Civ. Pro. 26 which requires all parties to disclose "documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[2] Fed. R. Civ. P. 26. And now, on summary judgment, where Defendants specifically challenge the absence of medical documentation, Plaintiff has still not submitted his medical records, but instead relies on his own affidavit and a few photographs of his bruising. While the photographs are enough to establish the bruising, there is no other evidence to support Plaintiff's allegations that he suffered "acute lumbar strain, renal contusion resulting in a blood clot and damage to [his] right kidney, blood in [his] urine, injuries to [his] neck, [...] neuropraxia due to handcuffs, shoulder sprain, contusion to [his] toes, and tingling and numbness in [his hands]." Pl.'s aff., Rec. Doc. 20-2, p. 4. Without sufficient evidence on these claims, Plaintiff's excessive force claim will fail because his injury will be more akin to mere bruising which has been held to

---

[2] While this point is beyond the scope of the instant motion, medical records are usually discoverable and thus required to be handed over during initial disclosures when the injury is put at issue, such as it is in this case. See, e.g. Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000).

be only *de minimis.*   Therefore, the issue is whether Plaintiff's affidavit alone can create an issue of material fact as to the presence or absence of actionable injuries.

Other courts have held that a self-serving affidavit cannot contradict prior sworn testimony; but, that is not the exact issue here.   <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996). Plaintiff has consistently described his injuries in his complaint, affidavit, and in his deposition, and Defendants have not submitted any evidence that negates the presence of injuries.   Pl. Dep., Rec. Doc. 19-2, p. 76-78, 86. Despite this consistency, the Court finds that Plaintiff's own testimony regarding his injuries, without medical support cannot be enough to create a genuine issue of material fact.   Plaintiff has had ample time and opportunity to supply his medical records, but has "elected not to burden the Court with his [...] voluminous medical records at this stage of the litigation." Pl.'s Surreply, Rec. Doc. 27, p. 4. This stage of the litigation, however, is precisely the time in which Plaintiff must submit the evidence that he has to combat the Defendants' challenges. Plaintiffs injuries do not speak only to causation and damages, as Plaintiff asserts they do.   <u>Id</u>. The ability to prove injury is an essential element required to prove liability under the

theory of excessive force, and because Plaintiff has failed to submit evidence to prove this element, Plaintiff must not be allowed to assert his excessive force claim as a basis for liability under § 1983.

Because the Defendants' motion for summary judgment must be granted on this issue, the Plaintiff's remaining arguments concerning the admissibility of Deputy Edwards' narrative report are moot and need not be discussed.


**D. Qualified Immunity**

Defendants assert that Deputy Edwards is protected by qualified immunity. The United States Supreme Court has clearly laid out a two-step inquiry to be applied in a qualified immunity analysis. The first inquiry asks whether "the facts alleged show the officer's conduct violated a constitutional right" when taken in a light most favorable to the injured party. Saucier v. Katz, 533 U.S. 194, 201 (2001); Wallace v. Cnty. of Comal, 400 F.3d 284, 289 (5th Cir. 2005). Then, and only if a constitutional violation is found, the second inquiry asks "whether the right was clearly established." Id. As discussed above, Plaintiff has submitted enough evidence to create a genuine issue of material fact on the question of whether Deputy Edwards' conduct violated

the Fourth Amendment under a false arrest theory.

Thus, the dispositive question on Deputy Edwards' qualified immunity defense is whether the right was clearly established. In this second step of the Saucier analysis, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. The question of whether an officer's conduct is reasonable is a question of law, but if the underlying facts of the event are in dispute, some further fact-finding may be required. See Wilson v. Layne, 526 U.S. 603, 615 (1999) (noting that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."). As such, the Court is "unable to make the determination of the objective reasonableness of the officer's activities 'without settling on a coherent view of what happened in the first place.'" Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994) (citing Lampkin v. City of Nacogdoches, 7 F.3d 430, 430 (5th Cir.1993). In Lampkin, for example, a denial of summary judgment was proper where the parties disputed "whether force was used against the plaintiffs, the amount of time the plaintiffs were detained, and whether any reason existed to detain the

plaintiffs." Mangieri, 29 F.3d at 1016.   In the present matter, the parties disagree on several factual points–the Plaintiff's behavior, the amount of interference, and the amount of force applied– making it difficult to settle on a "coherent view" of the evening.  Therefore, the Defendants' motion for summary judgment must be denied in as much as the Defendants' assert the protection of qualified immunity.


**D. State Law Negligence Claim**

"A federal court has jurisdiction over an entire action, including state law claims, when the federal and state law claims derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Carnegie–Mellon University v. Cohill, 484 U.S. 343, 349 (1988) (internal citations omitted).  Courts have discretion regarding whether to hear state law claims and should consider the values of "judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Id. at 350. Here, the operative facts required to analyze Plaintiff's state and federal claims are identical, as are many of the legal arguments.  Therefore, in the interest of

judicial economy and convenience, it is appropriate for this Court to exercise supplemental jurisdiction over Plaintiff's state law negligence claim.

Defendants assert "that there is simply no evidence to support" Plaintiff's negligence allegation. The Plaintiff argues, however, that Deputy Edwards' "actions squarely constitute negligence under Louisiana's well-established duty-risk analysis." Rec. Doc. 2, pp. 16-17.

Louisiana's duty-risk analysis requires a plaintiff to prove: "that (1) the Defendants' conduct was the cause in fact of the harm, (2) the Defendants owed a duty of care to [the plaintiff], (3) the duty was breached, and (4) the risk was in the scope of harm afforded by the duty." Batiste v. Theriot, 458 F. App'x 351, 360 (5th Cir. 2012). Neither party offers any legal authority as to the existence or non-existence of a duty in this case, but a review of the relevant case law shows that courts have recognized a duty in similar cases. See Braud v. Painter, 730 F. Supp. 1, 10 (M.D. La. 1990) (holding that "[s]urely there is a general principle of law that police officers ought not to arrest citizens without probable cause.") Therefore it is appropriate to move forward to the breach element.

To determine if the Defendant breached his duty, Louisiana

requires a showing as to whether the Defendant's actions were reasonable, therefore summary judgment will be improper on this claim for the same reasons it was improper on Plaintiff's § 1983 claims individually against Deputy Edwards. <u>Batiste</u>, 458 F. App'x 351 at 360 (discussing the reasonableness determination for excessive force claims). There is simply no way in which this Court can make a reasonableness determination when the facts are disputed as they are in the present matter. <u>See Davidson v. Stanadyne, Inc.</u>, 718 F.2d 1334, 1338 (5th Cir. 1983) (holding that "the use of summary judgment is rarely appropriate in negligence [...] cases, even where the material facts are not disputed.). Therefore, the Defendants' motion for summary judgment should be denied with respect to Plaintiff's state law negligence claims.

For the foregoing reasons, **IT IS ORDERED** that the Defendants' Motion for Summary Judgment be **GRANTED** as to the Plaintiff's 42 U.S.C. § 1983 claim against Sheriff Daniel Edwards in his official capacity.

**IT IS FURTHER ORDERED** that the Plaintiff's 42 U.S.C. § 1983 claim against Sheriff Daniel Edwards in his official capacity be **DISMISSED with prejudice.**

**IT IS ORDERED** that the Defendants' Motion for Summary

Judgment be **DENIED** as to the Plaintiff's 42 U.S.C. § 1983 claim against Deputy Johnathan Edwards in his individual capacity.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment be **DENIED** as to the Plaintiff's negligence claim against both Deputy Edwards and Sheriff Edwards.


New Orleans, Louisiana this 1st day of July, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE